| | |
|---|---|
| STATE OF NORTH DAKOTA | IN DISTRICT COURT |
| COUNTY OF MCKENZIE | NORTHWEST JUDICIAL DISTRICT |

Continental Resources, Inc., an Oklahoma corporation,

    Plaintiff,

v.

North Dakota Board of University and School Lands, and the United States of America,

    Defendants.

Case No. 27-2016-CV-00529

**COMPLAINT FOR INTERPLEADER PURSUANT TO N.D.R.CIV.P. 22**

Continental Resources, Inc. alleges for its complaint as follows:

## INTRODUCTION

1. Continental Resources, Inc. ("Continental") brings this Complaint against the North Dakota Board of University and School Lands ("North Dakota") and the United States of America for interpleader pursuant to N.D.R.Civ.P. 22.

2. Continental is an oil and gas production company that leases property from both North Dakota and the United States in McKenzie, Mountrail, and Williams Counties, North Dakota to explore for and produce oil and gas.

3. North Dakota and the United States assert competing rights and interests in portions of the property leased to Continental, exposing Continental to competing and inconsistent claims for royalties by the two Defendants and the prospect of double liability. Accordingly, Continental brings this action for interpleader to determine the respective rights of North Dakota and the United States to royalty payments attributable to the property in which North Dakota and the United States both claims rights and interests.

## JURISDICTION

4.   This Court has subject matter jurisdiction over this lawsuit pursuant to N.D.C.C. § 27-05-06.

5.   Continental brings this action for interpleader pursuant to N.D.R.Civ.P. 22, which provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." *See also* N.D.C.C. § 32-11-02.

6.   Continental also brings this action for interpleader pursuant to 28 U.S.C. § 2410, which allows the United States to be named as a party to a lawsuit "in any State court having jurisdiction of the subject matter[,] of interpleader or in the nature of interpleader with respect to, real or personal property on which the United States has or claims a mortgage or other lien."

## VENUE

7.   Venue is proper in this Court pursuant to N.D.C.C. § 28-04-01 because the relevant royalty obligations are based on the production from wells, some of which are located in McKenzie County, North Dakota. North Dakota law provides that a plaintiff must bring an action "for the determination in any form of [a] right or interest," in real property in "the county in which the subject matter of the action, or some part thereof, is situated." N.D.C.C. § 28-04-01.

8.   Similarly, suits for "the recovery of personal property" must "be tried in the county in which the subject of the action, or some part of the subject, is situated" pursuant to N.D.C.C. § 28-04-02.

## PARTIES

9.   Continental is a corporation organized under the law of Oklahoma, with its headquarters in Oklahoma City. Continental is engaged in the business of crude oil and natural gas exploration, development, and production. Continental has entered into numerous leases for

the production of oil and gas in North Dakota, including with both Defendants, in the course of its business.

10. The United States of America owns or claims to own minerals within the spacing unit of various wells operated by Continental and leases those minerals to Continental in exchange for consideration that includes a royalty interest in the severed oil and gas attributable to the minerals owned by the United States. Continental's obligation to pay royalties to the United States creates "a continuing security interest in and a lien on the oil or gas severed, or the proceeds of sale if the oil or gas has been sold, to the extent of [the United States'] interest until the purchase price has been paid to [the United States]." N.D.C.C. § 35-37-02; *see also* 28 U.S.C. § 2410 (authorizing interpleader naming the United States where the United States has or claims a lien on the property at issue).

11. North Dakota owns or claims to own minerals within the spacing unit of various wells operated by Continental and leases those minerals to Continental in exchange for consideration that includes a royalty interest in the severed oil and gas attributable to the minerals owned by North Dakota.

## STATEMENT OF CLAIM

12. North Dakota was admitted to the Union as the 39th state on November 2, 1889.

13. By virtue of the federal constitutional principle known as the Equal Footing Doctrine, North Dakota gained title "within its borders to the beds of waters then navigable" at the time it joined the Union. *See PPL Montana, LLC v. Montana*, 132 S. Ct. 1215, 1228 (2012). As a result, North Dakota received title to those parts of the Missouri River navigable at the time North Dakota joined the Union to the extent the Equal Footing Doctrine so provides.

14. In the 1950s, the United States acquired land by purchase and condemnation to build the Garrison Dam on the Missouri River, subsequently flooding areas adjacent to the Missouri River. The erection of the Garrison Dam created Lake Sakakawea, which spans approximately 480 square miles.

15. In addition to land that the United States purchased or condemned in the course of the project to build the Garrison Dam, the United States has held title to property in the vicinity of the Missouri River and Lake Sakakawea since before North Dakota joined the Union.

16. Continental has entered into or assumed leases with the United States for oil and gas production from property within spacing units that encompass areas adjacent to and underlying Lake Sakakawea ("Federal Leases"). As part of the consideration for the Federal Leases, Continental has agreed to make royalty payments to the United States for the severed oil and gas attributable to the mineral estate covered by the Federal Leases.

17. Continental has entered into or assumed leases with North Dakota for oil and gas production from property within spacing units that encompass areas adjacent to and underlying Lake Sakakawea ("State Leases"). Pursuant to the State Leases, Continental leases from North Dakota portions of the Missouri River, to which the State claims title pursuant to the Equal Footing Doctrine. As part of the consideration for the State Leases, Continental has agreed to make royalty payments to North Dakota for the severed oil and gas attributable to the mineral estate covered by the State Leases.

18. In 2010, North Dakota conducted a survey, which it now uses to define the boundaries of its claim to title in the Missouri River.

19. North Dakota now claims that its rights under the Equal Footing Doctrine cover all the submerged lands within the ordinary high-water mark of Lake Sakakawea, and not just the

riverbed of the historical Missouri River. Some of the lands, including the mineral estates, that the State now claims on the basis of this survey and which it leases to Continental under the State Leases, overlap with lands, including the mineral estates, of which the United States claims ownership and which the United States leases to Continental under the Federal Leases.

20. As a result of Defendants' reliance on competing surveys and because of additional adjustments by the Defendants to the boundaries of the property of which they respectively claim ownership, Continental presently holds leases with both Defendants that purportedly cover, in part, the same lands and minerals ("Disputed Lands").

21. Continental operates or has operated 43 wells that include the Disputed Lands within their spacing unit. A schedule of the wells for which Continental holds Federal Leases that conflict in part with one or more State Leases is attached hereto as **Exhibit 1**.

22. Continental makes royalty payments on a monthly basis to the owners of mineral interests it leases. The amount of these royalty payments is based on the proceeds from the sale of oil and gas severed in a given month attributable to the lessor's mineral interest. Continental pays royalties 30 days in arrears for produced oil, and 60 days in arrears for produced gas.

23. The United States and North Dakota each claim the rights to royalties from Continental, under the Federal and the State Leases, respectively, for oil and gas production attributable to the Disputed Lands. Every month, a certain portion of Continental's production is subject to those competing claims for royalties.

24. By operation of North Dakota law, the United States and North Dakota both have or claim a continuing security interest in and lien on oil and gas produced by Continental, or the proceeds from the sale thereof, to the extent of their royalty interest under the Federal and State Leases, respectively, until Continental makes the royalty payment owed to them. N.D.C.C. § 35-

37-02(1); *see also* 28 U.S.C. § 2410 (authorizing interpleader naming the United States where the United States has or claims a lien on the property at issue).

25. Presently, Continental faces competing claims for royalties by North Dakota and the United States based on oil and gas extracted from 1,026.8837 acres of Disputed Lands.

26. For gas produced from the 43 affected wells through the end of September 2016 and oil produced from the 43 affected wells through the end of October 2016, North Dakota claims a right to royalties in the amount of $3,286,728.31 based on the portion of that production attributable to the Disputed Lands.

27. For gas produced from the 43 affected wells through the end of September 2016 and oil produced from the 43 affected wells through the end of October 2016, the United States claims a right to royalties in the amount of $2,446,849.37 based on the portion of that production attributable to the Disputed Lands.[1]

28. Oil and gas production is ongoing at the wells that include the Disputed Lands within their spacing unit, and conflicting royalty claims by North Dakota and the United States will continue to increase.

29. Continental has continued to pay the United States royalty obligations related to the Disputed Lands through November 2016.

30. Since October 24, 2013, Continental also has placed in escrow with the Bank of North Dakota any additional royalty payments related to the Disputed Lands that would be due

---

[1] The total acreage of the Disputed Lands is an estimate based on a review of the relevant surveys and other materials on which North Dakota and the United States base their claims. The difference in the value of the royalties each party can claim is attributable to the difference in royalty rate under the terms of the respective State and Federal Leases. A schedule providing a more detailed accounting of the value of production from each of the affected wells and the Defendants' respective claims for royalties based on production attributable to the Disputed Lands is attached hereto as **Exhibit 2**.

North Dakota by virtue of differences in the royalty rates between the Federal Leases and the State Leases.

31. By reason of these conflicting claims, Continental is in great doubt as to which Defendant is entitled to be paid royalties related to the Disputed Lands.

32. Continental does not in any respect collude with either Defendant concerning valid title to the mineral estates in dispute, nor does Continental bring this action upon the request of either Defendant.

33. Continental does not assert title in the Disputed Lands, and brings this suit merely to avoid being subject to duplicate liability for royalty obligations for the mineral production attributable to the Disputed Lands.

## PRAYER FOR RELIEF

WHEREFORE, Continental respectfully requests this Court enter judgment or orders as follows:

(1) Relieving Continental from making payments to both North Dakota and the United States on the Disputed Lands and, until the resolution of this matter, allowing Continental to pay into the Court's registry, or such other depositary as the Court may designate, an amount equal to the outstanding royalty from the proceeds of production from the Disputed Lands putatively owed to either the United States or North Dakota, whichever is greater, and to make ongoing deposits into the Court's registry, or such other depositary as the Court may designate, as additional royalty payments become due and payable;

(2) Requiring the Defendants to interplead and state their respective claims to royalties on the proceeds of production from the Disputed Lands;

(3)     Adjudicating to whom Continental is to pay royalties on the proceeds of production from the Disputed Lands;

(4)     Restraining each of the Defendants from instituting any action against the Plaintiff for recovery of royalty payments relating to the Disputed Lands, unless and until the Defendants' respective rights to royalties associated with production from the Disputed Lands are resolved;

(5)     Awarding Plaintiff its costs, including attorney's fees, incurred in connection with the filing of this action; and

(6)     Granting such further and additional relief as is just and proper.

DATED this 23rd day of December, 2016.

FREDRIKSON & BYRON, P.A.

By: _____
LAWRENCE BENDER, ND Bar #03908
DANIELLE M. KRAUSE, ND Bar #06874
1133 College Drive, Suite 1000
Bismarck, ND 58501-1215
lbender@fredlaw.com
dkrause@fredlaw.com
(701) 221-8700

DAVID W. OGDEN, *pro hac vice admission pending*
PAUL R.Q. WOLFSON, *pro hac vice admission pending*
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
paul.wolfson@wilmerhale.com
david.ogden@wilmerhale.com
(202) 663-6390

*Attorneys for Continental Resources, Inc.*

60371148_1.docx